IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ziegenfuss Drilling, Inc., : 
                  Petitioner : 
                   : 
        v. : 
                   : 
Workers' Compensation Appeal : 
Board (Dailey), :   No. 1975 C.D. 2014
              Respondent :   Argued:  October 5, 2015

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
              HONORABLE MARY HANNAH LEAVITT, Judge
              HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY              FILED:  December 18, 2015

Ziegenfuss Drilling, Inc. (Employer) petitions for review of the October 17, 2014, Order of the Workers' Compensation Appeal Board (Board) which affirmed and modified the February 5, 2013, and May 16, 2012, Decisions and Orders of the Workers' Compensation Judge's (WCJ) grant of Ralph Dailey's (Claimant) Claim Petition.

## I. Background.

On May 11, 2011, Claimant filed a Claim Petition and alleged that he sustained a "right ankle fracture, torn ligament in left knee, dislocated hip, spleen injury, liver injury, fractured ribs, facial laceration…as a result of a work-related motor vehicle accident."  Claimant's Claim Petition, May 11, 2011, at 1; Reproduced Record (R.R.) at 5a.

On June 10, 2011, Employer filed an Answer and alleged that Claimant was not entitled to compensation pursuant to the Workers' Compensation Act (Act)[1] because he "was not in the course and scope of his employment at the time of the motor vehicle accident." Employer's Answer to Claim Petition, June 10, 2011, at 1; R.R. at 8a.

## II. Interim Order.

At the request of the parties, the Claim Petition was bifurcated to allow for a determination of a threshold issue, i.e., whether Claimant was in the course and scope of his employment with Employer at the time of the March 10, 2011, automobile injury.

Claimant, a resident of North Carolina, testified by telephone that he was employed as a driller's helper at natural gas wells in Pennsylvania for Employer since mid-September of 2010. Notes of Testimony, August 4, 2011, (N.T. 8/4/11) at 10-12 and 16; R.R. at 35a-37a and 41a. During his employment with Employer, Claimant worked at approximately twenty-two different job sites. N.T. 8/4/11 at 13; R.R. at 38a. Claimant did not maintain a residence in Pennsylvania, and Employer provided Claimant a weekly allowance for housing and food. N.T. 8/4/11 at 14 and 17; R.R. at 39a and 42a. Claimant was provided a company vehicle for transportation. N.T. 8/4/11 at 16; R.R. at 41a. On March 9, 2011, after the drilling was completed at the Clear Springs Dairy location, Claimant and another individual moved Employer's equipment to Employer's rented lot in Lock Haven. Claimant had dropped off drilling equipment at this

---

[1] Act of June 2, 1915, P.L. 736, *as amended*.

2

location, approximately ten times prior. N.T. 8/4/11 at 43; R.R. at 68a. Claimant usually dropped off the equipment at this location during the workday and on one other occasion it was his last duty of the day. N.T. 8/4/11 at 44; R.R. at 69a. Claimant then intended to travel to Towanda to stay in his rented room but was injured in an automobile accident. N.T. 8/4/11 at 21-23; R.R. at 46a-48a.

Leonard Long (Mr. Long), drill supervisor for Employer, testified that employees "get paid when they get to the job site, and they…quit getting paid when they leave the job site….Now if they're moving equipment, they get paid, you know, while they're moving the equipment also." N.T. at 61-62; R.R. at 86a-87a. Mr. Long experienced that in a situation where the last thing that the employee does for the workday is to drop off a piece of equipment, the employee's work day ends "[w]hen they drop off the equipment." Mr. Long testified that employees would not be paid for the travel time to where they're lodged. N.T. at 63; R.R. at 88a. Mr. Long agreed with Claimant's testimony that the Employer's work truck was used to transport the employees from wherever they were staying to the well site. N.T. at 66; R.R. at 91a.

Mark Ziegenfuss (Mr. Ziegenfuss), Employer owner, testified that an employee's work day started when he arrived at the drilling site and ended when he left the drilling site. N.T. at 87; R.R. at 112a. Employees are paid for time spent moving a drill rig from site to site, or to the lot in Lock Haven. Mr. Ziegenfuss noted that if moving a drill rig is the last task of the day, the employee's work day ends when he is done moving the equipment. N.T. at 88; R.R. at 113a. Mr. Ziegenfuss testified that Employer paid for employees' motel

3

rooms and provided employees with $25.00 per day for meals. N.T. at 90; R.R. at 115a. Employees were not paid for the time they spent traveling from wherever they stayed to the well site. N.T. at 97; R.R. at 122a. Mr. Ziegenfuss believed that Claimant and the other individual involved in the motor vehicle accident intended to take time off from work after they dropped off the equipment in Lock Haven. N.T. at 94-95; R.R. at 1191a-120a.

Leonard Harper (Mr. Harper), a driller's helper, testified by deposition on behalf of Employer. Mr. Harper lived in Ohio but worked in Pennsylvania. Deposition of Leonard Harper, October 17, 2011, (Mr. Harper Deposition), at 4; R.R. at 236a. Mr. Harper was not paid for the time it took to travel from a work site to his motel. Mr. Harper Deposition at 10; R.R. at 242a. Mr. Harper testified that he regularly traveled to the service yard in Lock Haven. Mr. Harper Deposition at 7; R.R. at 239a. If Mr. Harper traveled to the service yard at the end of the work day, he was paid for his travel time to the service yard but his work day ended when he left the service yard. Mr. Harper Deposition at 9; R.R. at 241a. Mr. Harper testified that he worked at a couple hundred different work sites. Mr. Harper Deposition at 23; R.R. at 255a.

On May 16, 2012, the WCJ made the following relevant findings of fact:

> ….
> 3. At time of hearing, Claimant was 32 years old. He began working for the Defendant [Employer] in mid-September 2010 as a driller's helper. The Defendant is involved in drilling operations in the Marcellus shale gas fields in Pennsylvania. Claimant resides in North Carolina.

4

4. Claimant typically worked regular hours as a driller's helper, 7:00 or 8:00 p.m. to 7:00 or 8:00 a.m. His job involved, among other things, operating equipment, moving equipment, welding, operating a boom truck, and, in general, assisting the driller.

5. Between September 2010 and March 9, 2011, Claimant worked at approximately 22 gas well sites, most of which were located in Bradford County, Pennsylvania. The last well site on which Claimant was working, immediately prior to the incident of March 10, 2011, was at Clear Springs Dairy in Burlington Township, Bradford County.

6. The parties agree that, typically, Claimant was assigned to work at a specific well site. At times he would be required by his employer to pick up materials at an outside location. At other times, Claimant would be transferred from one well site to another to perform work. The length of assignment at any one well site could vary from days to weeks. As a part of his job duties, Claimant would be required at times to move equipment from one location to another.

….

34. The WCJ credits the testimony of the Claimant. Claimant's testimony was internally consistent, was consistent in many respects with the testimony of the Defense [Employer] witnesses, seemed straightforward and logical, and was not materially affected by cross-examination. The WCJ also credits, in part, the testimony of Mr. Ziegenfuss, Mr. Long, and Mr. Harper as to the calculation of hours worked, the payment of wages, and the general job duties of a driller's helper.

35. However, to the extent that there are inconsistencies between the Claimant's explanation of his job duties in general, his work history with the company, his job assignments on March 9 and 10, 2011, his permitted use of the company truck, or the specific events of March 10, 2011, the WCJ will accept as credible the testimony of the Claimant. In this regard, the WCJ observes that Mr. Ziegenfuss and Mr. Long did not contradict Claimant's testimony that: (1) Claimant was allowed the use of a

5

company truck for work travel and personal travel and was allowed the use of the company truck on March 10, 2011; (2) Claimant was directed to transport the drill rig to Lock Haven which was not a typical assignment for Claimant, whose usual fixed place of employment was at a well site. The WCJ also notes the limited knowledge of Mr. Harper regarding the specific terms of Claimant's employment contract and duties with the company.

36. Based on the substantial, credible evidence, the WCJ further finds:

a) Claimant was employed by the Defendant [Employer] on March 9 and March 10, 2011 as a driller's helper. His regular hours were from 7:00 or 8:00 p.m. until 7:00 or 8:00 a.m. at well pad sites, as assigned by the employer. His job involved not only being present at well pad sites, but also, performing errands on behalf of the employer as assigned, including but not limited to, trips for equipment and supplies and to transport equipment. He had use of a company vehicle for both work and non-work activities. And, he was paid a fixed amount for daily expenses.

b) On March 9 and 10 Claimant reported first to a well site known as Clear Springs Dairy in Bradford County. When his work at that site was completed, he was directed by his employer to transport and deliver a drilling rig and equipment from the well site in Bradford County to an equipment yard in Clinton County. He was assisted by a co-worker, Tony Pirylis. They drove the boom truck and drill rig to Lock Haven, Clinton County, towing a company pickup truck for transportation back to Bradford County. However, their arrival at Lock Haven was delayed because of an equipment failure, a pump falling off the rig and a flat tire.

c) Claimant was not paid wages by the employer after completing the delivery of the equipment to Lock Haven.

6

d) Claimant was returning with Mr. Pirylis to Towanda, Bradford County at the time of the accident on March 10, 2011. The accident occurred in Tioga County, southwest of Bradford County at about 8:00 a.m. The accident did not occur at a location which would have been a deviation from the Claimant's route of return to Towanda, Bradford County.

e) Although Claimant had been residing in Fort Pitt, New York when assigned to the Clear Springs Dairy site, he intended, on March 10, 2011, to stay in a rented room in Towanda, Bradford County. His co-worker, Mr. Pirylis, intended to take the company truck to New Jersey.

f) Although Claimant's work did generally require his daily commute to a well site, on March 10, 2011, Claimant was performing an assignment which required him to travel away from his fixed place of employment, the well site, to the equipment yard in Lock Haven. The route he was traveling to Lock Haven and back to Bradford County, was not his typical commute from his lodgings to and from a well site in Bradford County.

37. Therefore, the WCJ finds that Claimant was traveling to Lock Haven, Clinton County, on March 10, 2011, as directed by his employer, on special assignment. His return trip from Bradford County was incidental to the special assignment and Claimant, although not being paid wages for the return trip, was using a company vehicle with permission of the employer to make the trip. Claimant was, at the time of the motor vehicle accident, engaged in a trip related to a special assignment, and was using a truck customarily provided to him as a part of his contract of employment with Defendant [Employer]. [Emphasis added.]

### CONCLUSIONS OF LAW
….

5. Based upon the substantial, credible evidence as determined in the Findings above, the WCJ concludes that the fixed place of work for the Claimant on March 9, and 10, 2011 was the well site to which he was temporarily assigned; that on March 10, 2011, Claimant was actually on a special mission for the employer and indeed, was furthering the business of the employer when he transported the drill rig and equipment to Lock Haven and, therefore, was required to later return from Lock Haven to Bradford County. The WCJ concludes that a company truck was available to the Claimant on that date, as had been done previously, as a part of Claimant's employment contract, whether or not he was engaged in actual work activities, although on the day in question, Claimant was not engaged in any personal activities when the motor vehicle accident occurred…

WCJ's Interim Order, May 16, 2012, (Interim Order) Findings of Fact (F.F.) Nos. 3-6, 34-37 and Conclusion of Law No. 5 at 1-9. The WCJ determined that "Claimant was both on a special mission and also, as per his contract employment, using the company truck to travel back to his lodging…when the vehicle accident occurred"…. Interim Order, Conclusion of Law No. 5 at 9.

### III. Claim Petition.

On July 3, 2012, Claimant described the medical treatment of his injuries that he sustained in the work-related automobile accident. Claimant testified that he returned to North Carolina and sought treatment at the emergency room of Murphy Medical Center for pain and infection in his right knee, ankle and toes. Notes of Testimony, July 3, 2012, (N.T. 7/3/12) at 7-8.[2] Claimant suffered from an infection in his stomach as the result of some sutures. N.T. 7/3/12 at 9. Claimant continued to experience pain in his right knee and in his left knee where he sustained a Posterior Cruciate Ligament (PCL) tear. N.T. 7/3/12 at 9-10.

---

[2] This transcript was not in the Reproduced Record.

Claimant could not perform certain activities, like squatting. N.T. 7/3/12 at 10. Claimant also treated at Carolina Wellness Concepts, located in Franklin, North Carolina, where he was seen by Marilyn Castle for pain management and was prescribed medication. He discontinued this treatment plan because he did not have insurance and could not afford it. N.T. 7/3/12 at 11-13.

Claimant presented the medical deposition testimony of Ronald E. DiSimone, M.D. (Dr. DiSimone), board-certified in orthopedic surgery. Deposition of Ronald E. DiSimone, M.D., December 5, 2012, (Dr. Simone Deposition) at 3-4.[3] Dr. DiSimone performed an Independent Medical Evaluation (IME) of Claimant on August 20, 2012. Dr. Simone Deposition at 4. Claimant complained of bilateral knee pain, right ankle pain and swelling, exacerbated by weight-bearing activities and right knee swelling made worse by prolonged attempts at standing or walking. Claimant informed Dr. DiSimone that he could not squat or kneel and that it was difficult to get in and out of the truck. Dr. Simone Deposition at 6. Dr. DiSimone's examination revealed that "Claimant had a positive patellofemoral inhibition test and a positive posterolateral sag sign with plus two posterior Drawer instability with a soft end point on testing his PCL." Dr. DiSimone Deposition at 7-8. Dr. DiSimone opined that Claimant recovered from all of his diagnosed injuries, with the exception of the following: bimalleolar right ankle fracture status post open reduction internal fixation, bilateral femoral condyle contusions with chondral defects and open laceration bilateral knees, and partial tear posterior cruciate ligament left knee. Dr. DiSimone Deposition at 9-11. Claimant's knees showed evidence of chondral defects, or traumatically-caused

---

[3] Dr. DiSimone's Deposition is not part of the Reproduced Record.

areas where the cartilage is missing, consistent with "dashboard injuries," which was associated with painful swelling "and pain and insecurity on walking." Dr. DiSimone Deposition at 11. Claimant's PCL tear did "not cause a lot of symptoms…[but was] a big problem and [was] an ongoing area of instability in the left knee." Dr. DiSimone Deposition at 11. Dr. DiSimone opined that the unresolved diagnoses were responsible and necessary to restrict the patient in his ability to perform work. Dr. DiSimone Deposition at 12. Dr. DiSimone believed that if Claimant underwent a successful PCL reconstruction, he would eventually be capable of returning to work as a driller. Dr. DiSimone Deposition at 13.

Employer presented the deposition testimony of Michael Wolk, M.D. (Dr. Wolk), board certified in physical medicine and rehabilitation. Deposition of Michael Wolk, M.D., September 24, 2012, (Dr. Wolk Deposition) at 3-4. On August 21, 2012, Dr. Wolk performed an IME of Claimant, took Claimant's medical history, and reviewed medical records. Dr. Wolk Deposition at 9. Claimant informed Dr. Wolk that he could sit for two hours at a time and could only stand or walk twenty to thirty minutes at a time. Dr. Wolk Deposition at 13. Claimant's medical records revealed that he was injured in an automobile accident and sustained a right forehead laceration, a right nose laceration with head injury, right greater than left bilateral pulmonary contusions, frail chest on the right with right-sided hemo and pneumothorax which required a chest tube, multiple bilateral rib fractures, a Grade 1 liver laceration with hemoperoneum, a Grade 2 and 3 spleen contusion, a right adrenalin hemorrhage surrounding the adrenal gland and the inferior vena cava, a left hip fracture dislocation and posterior acetabular fracture, an open right ankle fracture, a bimalleolar and laceration of the left knee,

10

and left flank abrasion. Dr. Wolk Deposition at 14. Dr. Wolk believed Claimant exhibited a moderate degree of symptom magnification and did not put forth a full reliable consistent effort during physical type maneuvers. Dr. Wolk Deposition at 18. Dr. Wolk opined that Claimant suffered significant injuries as a result of the work-related injury that required multiple surgical procedures and intensive rehabilitation. However, Dr. Wolk concluded that Claimant recovered and was capable of returning to work on August 21, 2011. Dr. Wolk Deposition at 25.

On February 5, 2013, the WCJ made the following relevant findings of fact concerning the claim petition:

49. The WCJ finds credible, in part, the testimony of the Claimant. The WCJ specifically credits Claimant's explanation of the nature of the work injury, his treatment post-injury, his ongoing symptoms and disability, and his limitations as to certain physical activities.

50. In crediting the testimony of the Claimant, in part, the WCJ took into account: the manner in which Claimant testified; the mechanism of the work injury; the corroboration of the Claimant's symptoms and disability by Dr. DiSimone; the admission of the symptoms and disability by Dr. DiSimone; the admission of the significance of the initial injuries by Dr. Wolk; the concessions of Dr. Wolk that Claimant does suffer ongoing problems at the site of the splenectomy and in the left knee; and the Claimant's efforts to follow up with appropriate medical treatment post-injury despite the denial of Workers' Compensation coverage. While testifying, Claimant did not magnify, or embellish his symptoms.

51. The WCJ finds credible the medical explanations and opinions of Dr. DiSimone. In crediting these opinions, the WCJ took into account the thorough and detailed nature of the doctor's analysis, the clarity of his

11

explanations, and the consistency of his opinions despite a careful cross-examination. The WCJ further observes that, in certain respects, Dr. Wolk did concede findings made by Dr. DiSimone, for example with regard to the laxity in the left knee, the PCL injury. Further, the reliance by Dr. DiSimone on the Claimant's credibility is consistent with the WCJ's impression of the Claimant's testimony at the time of hearing.

52. The WCJ rejects as not credible the opinions of Dr. Wolk to the extent he opined Claimant was fully recovered, or, that Claimant could return to work as a driller's helper without restrictions. In this regard, the WCJ has accepted as credible the testimony of the Claimant, and the opinions of Dr. DiSimone to the contrary.

53. In summary, the WCJ finds that the substantial, credible evidence shows: (1) Claimant suffered work injuries on 03/10/11 as itemized by Dr. DiSimone at Finding of Fact No. 17 above; (2) Claimant requires treatment for and suffers ongoing disability from three of the diagnoses attributable to the work injury as opined by Dr. DiSimone at Finding of Fact 18 above; (3) Claimant has not fully recovered from the work injury; [and] (4) Claimant cannot, currently, perform his time of injury job as a driller's helper.

## CONCLUSIONS OF LAW

….

7. The medical opinions of Dr. DiSimone and Dr. Wolk were unequivocal and were rendered to a reasonable degree of medical certainty. Nonetheless, these opinions were conflicting.

8. The WCJ has resolved the conflicting medical opinion evidence by accepting the diagnoses and opinions of Dr. DiSimone and rejecting the opinions of Dr. Wolk to the contrary. [Emphasis added.]

9. Therefore, it must be specifically concluded that Claimant suffered an injury as described by the medical opinions of Dr. DiSimone…and continues to suffer

12

injury-related disability, as per the opinions of Dr. DiSimone…under the terms of the Act.

WCJ's Decision, February 5, 2013, F.F. Nos. 49-53 and Conclusions of Law Nos. 7-9 at 8-11; R.R. at 291a-292a. The WCJ granted Claimant's Claim Petition.

The Board affirmed the decision of the WCJ based on alternative grounds and modified the WCJ's Decision. The Board also ordered Employer to pay statutory interest and deduct Claimant's attorney's fee, in accordance with the Fee Agreement, on all due and unpaid medical expenses. The Board reasoned:

> After a careful review of the record, we determine that the WCJ did not err in finding that Claimant was in the course and scope of his employment with Defendant [Employer] at the time of his injury. However, we reach this determination on different grounds. The WCJ found that Claimant was working at a fixed location, the well site, but that he was traveling to Lock Haven on March 10, 2011, as directed by his employer, on a special assignment. He found that Claimant's return trip was incidental to this special assignment, and that although he was not being paid for his time during the return trip, he was using a company vehicle with Defendant's [Employer's] permission, with such vehicle being customarily provided to him as part of his contract of employment with Defendant [Employer].
>
> We believe, after review, that the WCJ erred in finding that Claimant was working at a fixed location at the time of his injury….

Board's Decision, October 17, 2014, (Decision) at 8-9; R.R. at 313a-314a.

13

**II. Present Controversy.**
A. <u>Whether Claimant Was In The Course And Scope Of His Employment At The Time Of The Motor Vehicle Accident?</u>

First, Employer argues[4] that the Board erred when it affirmed the WCJ's conclusion that Claimant was in the course and scope of employment at the time of the motor vehicle accident.

Employer contends that the Board erred when it affirmed the WCJ's determination that Claimant was in the course and scope of employment where he commuted from his fixed place of employment after the end of his workday and intended to travel to his friend's home, and where none of the exceptions to the "going and coming" rule apply.

Whether an employee is in the course and scope of his employment at the time of an injury is a question of law which must be based on the findings of fact. *Stillman v. Workmen's Compensation Appeal Board (CBR Enterprises)*, 569 A.2d 983 (Pa. Cmwlth. 1990). The course of employment is necessarily broader for traveling employees and is liberally construed to effectuate the purposes of the Act. *Aluminum Co. of America v. Workmen's Compensation Appeal Board (Howar)*, 380 A.2d 958 (Pa. Cmwlth. 1977). When a traveling employee is injured after setting out on the business of his employer, it is presumed that he was furthering the employer's business at the time of the injury. *Investors Diversified*

---

[4] This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 589 A.2d 291 (Pa. Cmwlth. 1991).

*Services v. Workmen's Compensation Appeal Board*, 520 A.2d 958 (Pa. Cmwlth. 1987). The employer bears the burden of rebutting this presumption. *Aluminum Co.* To meet its burden, the employer must prove that the claimant's actions were so foreign to and removed from his usual employment that they constitute an abandonment of that employment. *Port Authority of Allegheny County v. Workmen's Compensation Appeal Board (Stevens)*, 452 A.2d 902 (Pa. Cmwlth. 1982).

Here, this Court concurs with the Board's conclusion that Claimant was a traveling employee at the time of his injury pursuant to *Roman v. Workmen's Compensation Appeal Board (Department of Environmental Services)*, 616 A.2d 128 (Pa. Cmwlth. 1992) and *Sheckler Contracting v. Worker's Compensation Appeal Board (Yonek)*, 697 A.2d 1062 (Pa. Cmwlth. 1997). Here, the Board found:

> …Claimant, a resident of North Carolina, testified that he was employed as a driller's helper, to work at natural gas wells in Pennsylvania, since mid-September, 2010. During his employment with Defendant [Employer], he worked at approximately twenty-two different job sites. Claimant did not maintain a residence in Pennsylvania. During the time that he worked for Defendant [Employer], he flew home to North Carolina on four occasions, at Defendant's [Employer's] expense. While working in Pennsylvania, Claimant stayed at various motels, again at Defendant's [Employer's] expense. Claimant was also allowed the use of the company vehicle for personal reasons. Claimant was injured in a motor vehicle accident as he was on his way to Towanda to work at Defendant's [Employer's] next job site.
>
> We note several similarities between the facts of this matter and those of Roman and Sheckler, which seem to

15

place Claimant squarely in the shoes of a traveling employee. For example, in Roman and Sheckler, the claimants resided in hotels, during the workweek, which were paid for by the employer, and they returned home to their residences on the weekends. In Roman, in particular, there appeared to be no question that under those circumstances, the claimant was a traveling employee. In addition, in Sheckler, the claimant was actually traveling home at the time of his injury, but was nonetheless found to have been in the course and scope of his employment when he was injured. In that case, the Court found it significant that the claimant could have been asked to report to different worksites after he returned home. Here, Claimant reported to twenty-two different worksites during the course of his employment with Defendant [Employer], and he, in fact, expected to be picked up, from Towanda, to report to Defendant's [Employer's] next worksite.

….

…The facts, when viewed here in the light most favorable to Claimant as the prevailing party, establish that he was a traveling employee at the time of his injury. See Roman; Sheckler. Therefore, he was entitled to the broad presumption that he was injured during the course and scope of his employment when he was injured while going to his rented room after delivering equipment for Defendant [Employer]. As there was no evidence presented to rebut that presumption, the WCJ did not err in finding that Claimant was in the course and scope of his employment at the time of his injury. See Roman; Sheckler. Therefore, he was entitled to the broad presumption that he was injured during the course and scope of his employment when he was injured while going to his rented room after delivering equipment for Defendant [Employer]. As there was no evidence presented to rebut that presumption, the WCJ did not err in finding that Claimant was in the course and scope of his employment at the time of his injury. [Emphasis added.]

Decision at 10-12; R.R at 315a-317a.

The Board was correct in its determination that Employer clearly failed to satisfy its burden and establish that Claimant's actions were so foreign to and removed from his usual employment that they constituted an abandonment of that employment.

B.  Whether The Board Erred When It Ordered Employer To Pay Claimant's Attorney A Fee In The Amount of Twenty Percent Of All Unpaid Medical Bills?

Second, Employer contends that the Board erred when it ordered the Employer to pay Claimant's attorney a fee in the amount of twenty percent of all unpaid medical bills where the WCJ did not issue any findings as to the time and effort expended by the attorney or whether such an increased fee was reasonable.

The Fee Agreement provided:

1. Amount of Fee.
The attorney's fees charged by the Firm is a contingent fee of 20% of the amount awarded or agreed to by the parties, including interest, in the context of any petition. This fee shall also apply to all injury-related medical expenses which are paid as a result of the Firm's representation, through either an award or agreement.

Fee Agreement, May 5, 2011, at 1.

The WCJ found:

10.  Defendant [Employer] must pay to Claimant temporary total disability wage loss benefits at the weekly rate of $828.64 beginning 03/11/11 and continuing thereafter and ongoing as per the terms of the Act.

11.  Defendant [Employer] must pay those reasonable and necessary medical expenses causally related to the

17

described work injury, as per the cost containment schedules and the terms of the Act.

12. Defendant [Employer] must pay interest on past-due benefits at the rate of 10% per annum.

13. As Claimant has prevailed, Defendant [Employer] must pay Claimant's reasonable litigation costs as per the terms of the Act. Minicozzi v. WCAB (Indus. Metal Plating Inc.), 873 A.2d 25 (Pa. Cmwlth. 2005).

14. The foregoing notwithstanding, based upon the legal issue regarding course and scope of employment, and the deposition testimony of Dr. Wolk, the Defendant's [Employer's] contest of this matter has been reasonable. Therefore, <u>although Claimant's fee agreement with counsel is reasonable</u>, Claimant must bear his own counsel fees. [Emphasis added.]

WCJ's Decision, February 5, 2013, Conclusions of Law Nos. 10-14 at 10; R.R. at 293a.

The Board concluded:

Claimant argues, on Appeal, that the WCJ erred by failing to award statutory interest on all due and unpaid medical benefits, and by failing to order Defendant [Employer] to deduct and pay to Claimant's attorney a fee of 20% on all due and unpaid medical expenses. Contrary to Claimant's argument, the WCJ in Conclusion of Law No. 12, directed Defendant [Employer] to pay interest on past-due benefits at the rate of 10% per annum. In Glinka v. W.C.A.B. (Sears, Roebuck & Company), 462 A.2d 909 (Pa. Cmwlth. 1983), the Commonwealth Court resolved that pursuant to Section 406.1 of the Act, 77 P.S. § 717.1,[5] interest shall accrue on all due and unpaid compensation, including medical bills, at the rate of 10% per annum. In addition, the WCJ also approved Claimant's fee agreement with counsel,

---

[5] Added by Section 3 of the Act of February 8, 1972, P.L. 25.

and directed Defendant [Employer], in his Order, to deduct and pay these fees directly to counsel for Claimant. The Fee Agreement entered into by Claimant and his counsel, provides for a 20% fee of the amount awarded, including medical expenses….Medical expenses may be included when computing a claimant's attorney's contingent fee. Raulston v. W.C.A.B. (Tri-State Motor Transit), 606 A.2d 668 (Pa. Cmwlth. 1992). To the extent that the WCJ's Decision can be interpreted otherwise, we hereby modify to order Defendant [Employer] to pay statutory interest and deduct Claimant's attorney's fee, in accordance with the Fee Agreement, on all due and unpaid medical expenses.

Decision at 17-18; R.R. at 321a-322a.

In *Raulston*, a claimant sustained a work-related injury, filed a claim petition and was subsequently awarded workers' compensation benefits. The WCJ ordered employer to pay claimant weekly compensation and to pay claimant's medical bills. The WCJ's decision also ordered employer to deduct twenty percent of the compensation payable and pay it directly to claimant's attorney. Employer's insurer paid claimant's attorney twenty percent of the weekly benefits payable. However, the insurer, after forwarding eighty percent of the award for medical bills in order that it be paid to the medical providers, retained the additional twenty percent and refused to pay it to claimant's attorney. Claimant's attorney filed a petition with the Board and requested approval of attorney fees. The Board found that the attorney was not entitled to 20% of reimbursement for medical bills as part of his contingency fee. On appeal, this Court noted that "the referee's [WCJ's] decision did not explicitly state that claimant's attorney should receive twenty percent of the medical bill reimbursements. The referee [WCJ] also did not explicitly approve the fee agreement between claimant and his attorney as required by Section 442 of the Act." *Raulston*, 660 A.2d at 670. This Court determined

19

that an attorney's contingency fee could come out of reimbursement for medical expenses and remanded for a determination of whether the claimant and the attorney intended for the attorney to receive a percentage of medical bill reimbursements as part of his fee and whether the attorney's fee was reasonable.

Here, unlike in *Raulston*, it is evident from the record that the fee agreement specifically provided that a fee was due on all compensation payable, including medical expenses. Additionally, the WCJ concluded that "Claimant's fee agreement with counsel is reasonable." WCJ's Decision, February 5, 2013, Conclusion of Law No. 14 at 10; R.R. at 293a.

Accordingly, the decision of the Board is affirmed.

_____
BERNARD L. McGINLEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ziegenfuss Drilling, Inc.,       :
            Petitioner       :
      :
          v.       :
      :
Workers' Compensation Appeal       :
Board (Dailey),       :   No. 1975 C.D. 2014
            Respondent       :

# **O R D E R**

AND NOW, this 18th day of December, 2015, the Order of the Workers' Compensation Appeal Board is affirmed.

_____
BERNARD L. McGINLEY, Judge